UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.:

CHECKERS DRIVE-IN RESTAURANTS, INC.,

    Plaintiff,

vs.

JIGNESH PANDYA, 8001 ROOSEVELT BLVD., LLC, 2105 BURLINGTON, LLC, SRI DEVADEVA, LLC, 2008 W. OREGON AVE., LLC, SRI KIRTI, LLC, SHRI VIGNESHWAR, LLC, SHRI CHINTAMANI, LLC, SHRI BALLALESHWAR, LLC, SHRI SIDDHATEK, LLC SHRI VARADAVINAYAK, LLC, SHRI GIRIJATMAJ, LLC, SRI MAHAGANAPATI, LLC, and SHRI MAYURESHWAR, LLC,

    Defendants.
_____/

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Checkers Drive-In Restaurants, Inc. ("Checkers") sues Defendants Jignesh Pandya ("Pandya") and 8001 Roosevelt Blvd., LLC, 2105 Burlington, LLC, Sri Devadeva, LLC, 2008 W. Oregon Ave., LLC, Sri Kirti, LLC, Shri Vighneshwar, LLC, Shri Chintamani, LLC, Shri Ballaleshwar, LLC, Shri Siddhatek, LLC, Shri Varadavinayak, LLC, Shri Girijatmaj, LLC, Shri Mahaganapati, LLC and Shri Mayureshwar, LLC (collectively "Pandya's Companies") (Pandya and Pandya's Companies shall be referred to collectively as "Defendants") and states:

1.    This is an action to enjoin Defendants' unauthorized use of Checkers' valuable trademarks and service marks in connection with their unlawful operation of 13 restaurants located in Pennsylvania and Delaware as authorized CHECKERS® restaurants, as well as for Lanham Act

damages. Additionally, this is an action for money damages against Defendants for breaches of their written agreements with Checkers.

## I.     THE PARTIES

2. Plaintiff Checkers is a Delaware corporation with its principal place of business in Tampa, Florida.

3. Defendant Pandya is an individual, citizen and a resident of Pennsylvania.

4. Defendant 8001 Roosevelt Blvd., LLC ("Roosevelt") is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania.

5. Defendant 2105 Burlington, LLC ("Burlington") is a New Jersey limited liability company with its principal place of business in Burlington, New Jersey.

6. Defendant Sri Devadeva, LLC ("Devadeva") is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania.

7. Defendant 2008 W. Oregon Ave., LLC ("Oregon") is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania.

8. Defendant Sri Kirti, LLC, ("Kirti") is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania.

9. Defendant Shri Vighneshwar, LLC ("Vighneshwar") is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania.

10. Defendant Shri Chintamani, LLC ("Chintamani") is a New Jersey limited liability company with its principal place of business in Camden, New Jersey.

11. Defendant Shri Ballaleshwar, LLC ("Ballaleshwar") is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania.

12. Defendant Shri Siddhatek, LLC ("Siddhatek") is a Pennsylvania limited liability

company with its principal place of business in Philadelphia, Pennsylvania.

13. Defendant Shri Varadavinayak, LLC ("Varadavinayak") is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania.

14. Defendant Shri Girijatmaj, LLC ("Girijatmaj") is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania.

15. Defendant Shri Mahaganapati, LLC ("Mahaganapati") is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.

16. Defendant Shri Mayureshwar, LLC ("Mayureshwar") is a Pennsylvania limited liability company with its principal place of business in Philadelphia, Pennsylvania.

17. Defendant Pandya is the sole member of all of Pandya's Companies.

## II.     JURISDICTION AND VENUE

18. Checkers, the franchisor of the CHECKERS® and RALLY'S® brands, franchises restaurants in the United States that are involved in, among other things, the sale of selected foods and beverages. Checkers' franchise operations are conducted and supervised from its headquarters located in Tampa, Florida.

19. Checkers and Defendants have carried on a continuous course of direct communications by mail, e-mail and telephone through Checkers' headquarters in Tampa, Florida.

20. The course of dealing between Checkers and Defendants shows that decision-making authority is vested in Checkers' headquarters in Tampa, Florida.

21. Defendants voluntarily entered into franchise, guarantee, settlement and sublease relationships with Checkers which envisioned continuing and wide-reaching contacts with Checkers, the business of which is regulated from Checkers' headquarters in Tampa, Florida.

22. Defendants have breached contracts which were to be performed in Florida due to

their failure to make payments to Checkers in Tampa, Florida and their failure to cease use of Checkers' trademarks and system after their franchise agreements were terminated. These breaches have caused damage to Checkers at its headquarters in Tampa, Florida.

23. This Court has jurisdiction over this action based upon:

(a) Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1337, and 1338(a), for the claims arising out of Defendants' violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); and

(b) 28 U.S.C. § 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants' breaches of contracts and common law unfair competition.

24. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 and the forum selection clauses agreed to by the parties in their written agreements.

25. Defendants have agreed in writing that in any litigation to enforce the terms of the agreements between Checkers and Defendants, Checkers, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

26. Checkers has engaged the undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between Checkers and Defendants.

27. All conditions precedent to the institution of this action have been satisfied, discharged, excused and/or waived.

### III.   THE CHECKERS/RALLY'S MARKS

28. To identify the source, origin and sponsorship of Checkers' facilities, products, and services, Checkers has extensively employed, cause to be advertised and publicized throughout

the United States certain distinctive symbols as trademarks and service marks (the "Checkers Marks"). Checkers owns, and was the first to adopt and use, the Checkers Marks as trademarks and service marks and all right, title and interest in and to the Checkers Marks and the design, décor and image of CHECKERS® and RALLY'S® restaurants remains vested solely in Checkers.

29. Checkers franchises CHECKERS® and RALLY'S® restaurants using the Checkers Marks on signs, menu boards, posters, translites, uniforms, containers, cups and other items and in advertising to the public through television, radio, print media and the internet.

30. Set forth below is an abbreviated listing of the Checkers Marks registered to Checkers in the United States Patent and Trademark Office:

| Country | Mark Name | Status | Owner | Registration No. |
|---|---|---|---|---|
| United States | RALLY'S | Registered | CHECKERS DRIVE-IN RESTAURANTS, INC. | 1735052 |
| United States | CHECKERS | Registered | CHECKERS DRIVE-IN RESTAURANTS, INC. | 1782889 |
| United States | CHECKERS BURGERS-FRIES-COLAS | Registered | CHECKERS DRIVE-IN RESTAURANTS, INC. | 1656487 |
| United States | BIG BUFORD | Registered | CHECKERS DRIVE-IN RESTAURANTS, INC. | 1952628 |
| United States | RALLYBURGER | Registered | CHECKERS DRIVE-IN RESTAURANTS, INC. | 1799561 |
| United States | RALLY'S BURGERS FRIES COLAS | Registered | CHECKERS DRIVE-IN RESTAURANTS, INC. | 2595536 |

31. The registrations of the Checkers Marks are currently in full force and effect, and Checkers has given notice to the public of the registration of the Checkers Marks as provided in 15 U.S.C. § 1111.

32. Pursuant to franchise agreements and temporary operating agreements between Checkers and its franchisees or temporary operators, including Pandya's Companies, Checkers grants a limited license and authority to use and display the Checkers Marks, but only in such manner and at such locations and times as are expressly authorized by Checkers. In no event is a

franchisee or temporary operator authorized to use the Checkers Marks after the expiration or termination of its franchise. Such unauthorized use is expressly prohibited under the terms of the Defendants' agreements.

33. Checkers' products bearing the Checkers Marks are offered and sold in interstate commerce. Checkers and its franchisees have spent significant amounts of money advertising and promoting Checkers' restaurants, services and products.

34. The substantial investment made in the Checkers Marks has resulted in valuable good will for the Checkers Marks and for the restaurants, products and services bearing those marks. Checkers products and services have been met with popular approval and, as a result of Checkers' extensive sales, advertising, promotion and publicity, the public is familiar with the Checkers Marks. The products and services associated with the Checkers Marks are understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with Checkers.

### IV.   THE CHECKERS SYSTEM

35. Checkers has developed a comprehensive operating system for all Checkers franchisees in order to protect the image of CHECKERS®/RALLY'S® restaurants and to ensure uniform, high quality standards. The detailed specifications and procedures of the Checkers System are set forth in Checkers' Confidential Operating Manual (the "OPS Manual").

36. Every Checkers franchisee and temporary operator is required by its franchise agreement or temporary operating agreement to operate its franchise in accordance with the specifications and procedures contained in the OPS Manual. The OPS Manual sets forth in detail the mandatory Checkers restaurants operating standards, specifications and procedures, including rules governing areas such as good preparation and handling, cleanliness, health, sanitation, quality and speed of service. The OPS Manual is a confidential Checkers document which a franchisee is

permitted to have only during the term of the franchise agreement.

37. Checkers offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards, including regional and local training and instructional programs. This enables Checkers to safeguard the integrity of its restaurants, the Checkers System and the Checkers Marks.

38. As a result of its substantial expenditures of money and effort in developing and implementing the Checkers® system, Checkers has established a high reputation and positive image with the public as to the quality of products and services available at CHECKERS®/RALLY'S® restaurants, which reputation and image have been, and continue to be, valuable assets of Checkers. Checkers strives to maintain that reputation through its careful selection of authorized franchise owners, facilities and locations, and its careful supervision over the manner and quality of its restaurant service.

### V.     **PLAINTIFF'S WRITTEN AGREEMENTS WITH DEFENDANTS**

**A.     The Original Franchise Agreements and Their Termination**

39. Prior to April 8, 2019, Pandya's Companies were all franchisees in the CHECKERS® system pursuant to franchise agreements (the "Franchise Agreements").

40. By a letter dated February 6, 2019, Checkers notified Pandya's Companies that they breached the Franchise Agreements by failing to make various payments and advised Pandya's Companies that the Franchise Agreements would be terminated if Pandya's Companies did not cure the defaults within specified cure periods.

41. Pandya's Companies failed to cure the defaults identified in the February 6, 2019 letter.

42. Accordingly, by letters dated March 7, 2019 and April 8, 2019, Checkers notified

Pandya's Companies that the Franchise Agreements for the Restaurants terminated effective on those dates and further informed Defendants that they were obligated to comply with all post-termination obligations.

### B. The Arbitration, Settlement Agreement and Temporary Operating Agreements

43. On September 10, 2019, Checkers submitted to arbitration before the AAA, a demand for arbitration captioned *Checkers Drive-In Restaurants, Inc. v. Jignesh Pandya, et al.*, Case No. 01-19-0002-8649 (American Arbitration Association) (the "Arbitration").

44. On or about October 30, 2019, Checkers and Pandya's Companies entered into a settlement agreement (the "Settlement") to resolve the Arbitration.

45. Notwithstanding the valid termination of the Franchise Agreements, Pandya's Companies were permitted under the Settlement Agreement to enter temporary operating agreements (the "Temporary Operating Agreements"). In the Temporary Operating Agreements, Defendants acknowledged, agreed and confirmed the termination of the Franchise Agreements. The Temporary Operating Agreements are not franchise agreements.

46. Pursuant to the Temporary Operating Agreements, Pandya's Companies were permitted to own and operate thirteen (13) franchised CHECKERS® Restaurants (collectively the "Restaurants") for a limited time on the same terms and conditions as originally set forth in the Franchise Agreements, using Checkers' systems and names, including service marks and trademarks, in accordance with the terms and conditions of 13 Temporary Operating Agreements that were executed on or about December 3, 2019.

47. The Restaurants' number, location and the Defendant which operated it and the commencement date of each Restaurants' respective franchise agreement is set forth below:

| Restaurant No. | Restaurant Operator | Restaurant Location |
|---|---|---|
| 3040 | 2105 Burlington LLC | 2105 Burlington-Mt Holly Rd Burlington, NJ 08016 |
| 3114 | Shri Chintamani LLC | 2881 Mount Ephraim Ave Camden, NJ 08104 |
| 5334 | Sri Devadeva, LLC | 5726-46 Baltimore Avenue Philadelphia, PA 19143 |
| 5335 | Shri Ballaleshwar, LLC | 5726-46 Baltimore Avenue Philadelphia, PA 19143 |
| 5398 | Shri Siddhatek LLC | 4813-23 Lancaster Avenue Philadelphia, PA 19131 |
| 5481 | 2008 W. Oregon Ave., LLC | 2008 Oregon Avenue Philadelphia, PA 19145 |
| 5482 | Shri Varadavinayak, LLC | 5427 Oxford Avenue Philadelphia, PA 19124 |
| 5487 | Shri Girijatmaj, LLC | 232-50 W. Lehigh Avenue Philadelphia, PA 19133 |
| 5579 | Sri Mahaganapati, LLC | 4301 N. Market Street Wilmington, DE 19802 |
| 5627 | Sri Kirti, LLC | 5943 North Broad Street Philadelphia, PA 19141 |
| 5629 | Shri Vighneshwar LLC | 1208 N. Broad Philadelphia, PA 1912 |
| 5783 | 8001 Roosevelt Blvd LLC | 8001 Roosevelt Blvd. Philadelphia, PA 19132 |
| 6371 | Shri Mayureshwar, LLC | 2729 W. Hunting Park Ave. Philadelphia, PA 19129 |

48.     The Temporary Operating Agreements provided Pandya's Companies with a temporary license to operate the Restaurants through January 5, 2021 unless Pandya's Companies or Pandya breached any term of the Settlement or any of the agreements referenced in the Settlement, including the Temporary Operating Agreements and Subleases. The Temporary Operating Agreements make clear that they can be terminated, without further notice, in the event that Pandya or Pandya's Companies breached them.

49.     Under the terms of the Temporary Operating Agreements, Pandya's Companies

were obligated to make payments to Checkers for royalties, advertising and other fees for the term of the Temporary Operating Agreements. Specifically, Pandya's Companies were required to pay Checkers a royalty of a certain percentage of net sales in return for the use of the CHECKERS® system and the Checkers Marks.

50. Included in the Temporary Operating Agreements are personal guarantees (the "Guarantees"), pursuant to which Pandya absolutely and unconditionally guaranteed the payment and performance of each and every obligation of Pandya's Companies under the Temporary Operating Agreements.

51. Defendants breached the Settlement Agreement and Temporary Operating Agreements by, among other things, failing to make the required monthly settlement payments, failing to pay in full all amounts owed to Checkers and landlords for royalties, rent and other miscellaneous fees and failing to satisfy all obligations and meet all requirements set forth in an exhibit to the Settlement Agreement entitled "Philadelphia Marketing Guidelines," which set forth a timeline for Pandya's Companies to perform certain tasks, including tasks to improve the Restaurants.

52. The Temporary Operating Agreements expressly state that in the event that Defendants breach the Temporary Operating Agreements, Checkers may terminate them without providing any notice. Despite not being required to provide any notice or opportunity to cure, by a letter dated March 20, 2020, Checkers notified Defendants that they breached the Temporary Operating Agreements (the "Notice of Default"). The Notice of Default advised Defendants that the Temporary Operating Agreements would be terminated if the Defendants did not cure the defaults within a specified time.

53. Defendants failed to cure the breaches within the specified cure period.

54. Accordingly, by a letter dated March 26, 2020, Checkers notified Defendants that the Temporary Operating Agreements for the Restaurants terminated effective immediately (the "Notice of Termination"), and further informed Defendants that they were obligated to comply with all post-termination obligations, including the obligation to cease operation of the Restaurants.

55. Defendants have not ceased the operation of the Restaurants.

56. Terminated franchisees and temporary operators, such as Pandya's Companies, are prohibited from identifying themselves as either a current or former CHECKERS® franchisees, from using any of Checkers' promotional material and Checkers' Marks, or any mark confusingly similar. Terminated franchisees and temporary operators are further required, upon termination of their temporary operating agreement, to immediately make such removals or changes in signs and the building so as to effectively distinguish the building and premises from its former appearance

57. In light of these obligations, Defendants cannot continue to hold themselves out to the public as operating genuine and authorized CHECKERS® restaurants by continuing to use the Checkers Marks at the Restaurants subsequent to the Temporary Operating Agreements' termination.  In so doing, Defendants are infringing upon the Checkers Marks and breaching their explicit obligations under the Temporary Operating Agreements.

58. Additionally, the Franchise Agreements, which are incorporated in part by reference into the Temporary Operating Agreements, requires terminated temporary operators, such as Pandya's Companies to, within 30 days of the termination of the Temporary Operating Agreements, pay to Checkers all amounts due to Checkers and its affiliates.  To date, Defendants have not paid to Checkers all amounts owed.

59. Upon termination, Defendants were required to cease use of all confidential

information and return to Checkers all copies of the OPS Manuals.  To date, Pandya's Companies have not returned their OPS Manuals.

## VI. LIKELIHOOD OF CONSUMER CONFUSION AND DECEPTION

60. Despite the termination of the Temporary Operating Agreements, Defendants have not removed all of the Checkers Marks from the premises, and instead continue to operate the Restaurants, using the Checkers Marks on signs, menu boards, posters, translites, uniforms, cups and other items.

61. Defendants' use and display of the Checkers Marks or any items associated with the CHECKERS® name, symbols, or slogans at the Restaurants is without Checkers' license or consent, and has caused or is likely to cause mistake, confusion and/or deception in the minds of the public as to the source, affiliation and/or sponsorship.  Upon seeing the familiar Checkers Marks, through Defendants' unauthorized use thereof, consumers will be deceived into concluding that the products and services sold at the Restaurants are made or supplied by Checkers, are prepared in the prescribed Checkers manner and subject to Checkers' supervision, are sponsored or endorsed by Checkers and bear the Checkers Marks pursuant to Checkers' authority and permission.

62. Such impressions are calculated to and will have a material influence on customers' purchasing decisions, inducing them to patronize the Restaurants in reliance on the goodwill, reputation and appeal of Checkers.

63. By reason of the foregoing, Checkers has suffered damages, in an amount presently unknown yet substantial.  Checkers no longer is the source or sponsor of the Restaurants and does not endorse said Restaurants, or the produced and services provided therein, has not authorized Defendants to use the Checkers Marks to identify the terminated franchise facilities, products, or

services and has protested expressly against such use.

64. By virtue of termination of the Temporary Operating Agreements Checkers is unable to control the nature and quality of the goods and services that Defendants provide at the Restaurants.

65. Checkers will suffer serious, immediate and irreparable harm if Defendants' use of the Checkers Marks is not immediately enjoined.  Checkers' goodwill and reputation will suffer drastically by virtue of the public's identification of Checkers with the management and operation of the Restaurants.  Checkers exercises strict quality control over every phase in the marketing of CHECKERS® products and services, from specification of ingredients, the shipping of ingredients, to the supervision of food preparation and handling, to the maintenance of strict standards as to cleanliness, health, sanitation and quality of service.  The carefully nurtured image which Checkers now enjoys will be irretrievably injured by any association with the Restaurants, which are no longer subject to Checkers' control and supervision.

66. Defendants' unauthorized operation of the Restaurants poses an immediate threat to the distinct, exclusive image Checkers has created at great expense for its franchisees. CHECKERS®/RALLY'S® restaurants, services, and products are known by the Checkers Marks which are emblematic of their distinctive source.  CHECKERS®/RALLY'S® restaurants enjoy a special appeal to consumers which will be diluted by the existence of infringing Restaurants with products and services bearing the distinctive Checkers Marks.  The intangible, by commercially indispensable, value that CHECKERS® restaurants now enjoy will be severely undermined by the operation of the Restaurants, which make unauthorized use of the Checkers Marks.

67. Consumer confusion as to the source or sponsorship of the Restaurants bearing the Checkers Marks will be attended not only by an inevitable loss of product distinctiveness, image

and goodwill, but will also cause a diversion of sales from Checkers.  The economic injury to Checkers resulting from such diversion is incalculable and, as such, is an additional source of irreparable harm.

68. Checkers has performed all conditions precedent required of it under the parties' agreements and as a matter of law.

## COUNT I - LANHAM ACT INFRINGEMENT

69. Checkers re-alleges and incorporates Paragraphs 1 through 68 above as if fully set forth herein.

70. Pandya's Companies' acts constitute infringements of Checkers' registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

71. Checkers has suffered and will continue to suffer irreparable injury and damages due to Defendants' above described activities if Defendants are not preliminarily and permanently enjoined.

## COUNT II - LANHAM ACT FALSE DESIGNATIONS

72. Checkers re-alleges and incorporates Paragraphs 1 through 68 above as if fully set forth herein.

73. Defendants' acts constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

74. Checkers has no adequate remedy at law and has sustained injury and damage caused by Defendants' conduct.  Absent the entry of an injunction, Checkers will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

## COUNT III - COMMON LAW TRADEMARK INFRINGEMENT

75. Checkers re-alleges and incorporates Paragraphs 1 through 68 above as if fully set

forth herein.

76. Defendants' acts constitute unlawful trademark and service mark infringements under the common law.

77. Defendants' infringing activities are likely to cause confusion, mistake, and deception among members of the trade and the general consuming public.

78. Checkers has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

**COUNT IV - COMMON LAW UNFAIR COMPETITION**

79. Checkers re-alleges and incorporates Paragraphs 1 through 68 above as if fully set forth herein.

80. Defendant' acts constitute unfair competition under the common law.

**COUNT V**
**BREACH OF TEMPORARY OPERATING AGREEMENTS**
**(AGAINST PANDYA'S COMPANIES)**

81. Checkers re-alleges and incorporates Paragraphs 1 through 68 above as if fully set forth herein.

82. Pandya's Companies have not paid when due amounts owed to Checkers under the Temporary Operating Agreements for royalties and other amounts.

83. Checkers has made demand for these past due payments, but payment has not been made.

84. The failure of Pandya's Companies to pay Checkers as obligated constitutes a breach of the Temporary Operating Agreements.

85. Likewise, the failure of Pandya's Companies to cease operating the Restaurants as CHECKERS® restaurants in accordance with the Notices of Termination constitutes a breach of

the Temporary Operating Agreements.

86. These breaches have directly and proximately caused loss and damage to Checkers.

## COUNT VI
## BREACH OF THE GUARANTEES
## (AGAINST PANDYA)

87. Checkers re-alleges and incorporates Paragraphs 1 through 68 above as if fully set forth herein.

88. As discussed herein, Pandya's Companies failed to make payments due to Checkers pursuant to the Temporary Operating Agreements.

89. Pursuant to each of the Guarantees within the Temporary Operating Agreements, Pandya absolutely and unconditionally guaranteed performance of each and every term, condition, and restriction of the Temporary Operating Agreements, including the obligation to pay Checkers amounts due should Pandya's Companies fail to make such payment.

90. The failure of Pandya to ensure payment to Checkers and to pay amounts due to Checkers under the Temporary Operating Agreements constitute breaches of the Guarantees.

91. Additionally, Pandya's operation of the Restaurants after termination of the Temporary Operating Agreements is also a breach of the Guarantees.

92. These breaches have directly and proximately caused loss and damage to Checkers.

## DEMAND FOR ATTORNEYS' FEES AND COSTS

The Temporary Operating Agreements at issue in this litigation provide that the prevailing party is entitled to its attorneys' fees and costs. Checkers hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

WHEREFORE, Plaintiff Checkers Drive-In Restaurants, Inc. demands judgment against

Defendants Jignesh Pandya, 8001 Roosevelt Blvd., LLC, 2105 Burlington, LLC, Sri Devadeva, LLC, 2008 W. Oregon Ave., LLC, Sri Kirti, LLC, Shri Vighneshwar, LLC, Shri Chintamani, LLC, Shri Ballaleshwar, LLC, Shri Siddhatek, LLC, Shri Varadavinayak, LLC, Shri Girijatmaj, LLC, Shri Mahaganapati, LLC and Shri Mayureshwar, LLC jointly and severally, for:

1. Preliminary and permanent injunctions enjoining Defendants and all persons acting on their behalf, in concert with, or under their control, from:

(a) manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of Checkers trademarks, or any colorable imitation thereof at the Restaurants;

(b) displaying or using any of Checkers' trademarks to advertise or promote the sale of, or to identify, the Restaurants, or any product or service provided therein; and

(c) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants, the Restaurants, and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Checkers.

2. Preliminary and permanent injunctions directing Defendants and all persons acting on Defendants' behalf, in concert with Defendants, or under Defendants' control, to:

(a) recall and deliver up to Checkers all signs, banners, labeling, packaging, advertising, promotional, display and point-of-purchase materials which bear, or make reference to, any of the Checkers' trademarks, or any colorable imitation of the Checkers' trademark;

(b) recall and deliver up to Checkers all copies and editions of the OPS Manuals that are in their actual or constructive, direct or indirect, possession, custody or control, including

all supplements and addenda thereto and all other materials containing restaurant operating instructions, restaurant business practices, or plans of Checkers;

   (c) allow Checkers at a reasonable time, to enter the premises of the Restaurants and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from their appearance as CHECKERS® restaurants, and;

   (d) account and pay over to Checkers all gains, profits, and advantages derived by Defendants from any trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117 and by the controlling principles of common law.

  3. Money damages, plus three times additional actual damages Checekers has sustained by reason of Defendants' trademark and service mark infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

  4. Punitive damages because of the willful nature of Defendants' actions;

  5. Pre-judgment interest and Checkers' reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreement, and because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

  6. An order enjoining Defendants from operating a competitive business, as defined in the respective Franchise Agreements, within a three-mile radius of the Restaurants or any CHECKERS® restaurant for a two-year period;

  7. Compensatory damages, attorneys' fees and costs against Defendants due to their breaches of contracts;

  8. An order directing Defendants to file with the Court, and to serve on Checkers'

counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

9. All costs, disbursements, and expenses of this action; and

10. All such other relief as this Court may deem just and proper.

                                                  **s./ Aaron S. Blynn**

_____
Michael D. Joblove
Florida Bar No. 354147
mjoblove@gjb-law.com
Aaron S. Blynn
Florida Bar No. 073464
ablynn@gjb-law.com
GENOVESE JOBLOVE & BATTISTA, P.A.
4400 Miami Tower
100 Southeast Second Street
Miami, Florida  33131
Telephone:   (305) 349-2300
Facsimile:    (305) 349-2310
*Attorneys for Plaintiff Checkers Drive-In Restaurants, Inc.*